## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| NATHANIEL BRUNO and | ) | |
| FERDINAND DUENAS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | NO. 2:04-CV-489 |
| | ) | |
| M/V WIN STAR, her engines, | ) | |
| boilers, furniture, tackle | ) | |
| and apparel, RIVERBOAT | ) | |
| SERVICES, INC. and HARRAH'S | ) | |
| EAST CHICAGO CASINO & HOTEL, | ) | |
| | ) | |
| Defendants. | ) | |

### OPINION AND ORDER

This matter is before the Court on:  (1) Defendant Showboat Marina Casino Partnership's Rule 12(b)(1) Motion to Dismiss Plaintiffs' Admiralty Claims, filed on December 27, 2004; (2) Defendant Showboat Marina Casino Partnership's Rule 12(b)(6) Motion to Dismiss, filed on December 27, 2004; and (3) Defendants' Motion For Rule 11 Sanctions, filed on March 10, 2005.  For the reasons set forth below, Defendant's Rule 12(b)(1) Motion is **DENIED**.  However, Defendant's Rule 12(b)(6) Motion is **GRANTED**.  The Clerk is hereby **ORDERED** to dismiss this case **WITH PREJUDICE**.  Finally, Defendants' Motion For Rule 11 Sanctions is **DENIED**.

BACKGROUND

On November 24, 2004, Plaintiffs, Nathaniel Bruno and Ferdinand Duenas, filed this *in rem* and *in personam* action against Defendants, the *M/V Winstar* (the "*Winstar*"), her engines, boilers, furniture, tackle and apparel, their former employer, Riverboat Services, Inc. (hereinafter "RSI"), and Harrah's East Chicago Casino & Hotel (hereinafter "Harrah's"). The complaint alleges that Bruno and Duenas were employed aboard the *Winstar* as "able-bodied seam[e]n" to provide necessary services for the operation of Harrah's. (Compl. ¶ 2.) During part of the time employed, RSI served as the master of the *Winstar*, formerly known as the *M/V Showboat*, and was charged with the responsibility of paying the crew's wages, all of which were reimbursed to RSI through Harrah's or its subsidiary, Showboat Marina Casino Partnership (hereinafter "Showboat"). (Compl. ¶ 2.)

According to the complaint, Plaintiffs seek unpaid overtime wages, liquidated damages, and attorney's fees under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, for work performed aboard the *Winstar*, an almost-indefinitely moored vessel that is also a casino. Plaintiffs also seek to impress a  maritime wage lien against the *Winstar* under the Maritime Lien Act ("MLA"), 46 U.S.C. § 31342(a)(2), for overtime wages.[1] Plaintiffs assert that their FLSA overtime claims give them preferred maritime liens under the MLA.

---

[1] The Federal Maritime Lien Act was originally enacted in 1910 and codified at 46 U.S.C. § 971 *et seq.* The Act has since become part of the Commercial Instruments and Maritime Liens Act, codified at 46 U.S.C. § 31301 *et seq.*

Plaintiffs assert admiralty jurisdiction under 28 U.S.C. § 1333(1) and federal question jurisdiction under 28 U.S.C. § 1331  for the FLSA claims.

Plaintiffs allege that "although plaintiffs were ostensibly 'seamen', they were not 'employed as' seamen for purposes of their wage payments, within the meaning of 29 C.F.R. 783.31, and other implementing regulations of the United States Department of Labor." (Compl. ¶ 4.)   Plaintiffs strenuously argue that they are "seamen" for purposes of the MLA and securing maritime jurisdiction, but were not "employed as seamen," and thus cannot be exempted from recovering under the FLSA.  The FLSA exempts "any employee employed as a seaman" from bringing a claim for unpaid overtime wages.   29 U.S.C. § 213(b)(6).  Plaintiffs allege that the *Winstar* was moored virtually all (91% or more) of the time, and Plaintiffs did not perform services primarily to aid the operation of the vessel as means of transportation.  (Compl. ¶ 5.)  Rather, claim Plaintiffs, they spent a substantial portion of their time performing non-maritime services. (Compl. ¶ 5.)

Defendant Showboat, individually and as owner of the *Winstar*, has moved for entry of an order dismissing Plaintiffs' complaint with prejudice pursuant to both Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

DISCUSSION

For the purpose of analyzing Defendants' Rule 12(b)(1) claims, the following standards apply.  Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss claims over which the federal court lacks subject matter jurisdiction.  Jurisdiction is the "power to decide" and must be conferred upon a federal court.  *In re Chicago, Rock Island & Pacific R.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986).  When jurisdictional allegations are questioned, the plaintiff has the burden of proving that the jurisdiction requirements have been met.  *Kontos v. United States Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987).  In reviewing a Rule 12(b)(1) motion to dismiss, the Court may look beyond the complaint and review any extraneous evidence submitted by the parties to determine whether subject matter jurisdiction exists.  *United Transp. Union v. Gateway Western R.R. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996).

To the extent Defendants' arguments fall under Rule 12(b)(6), the Court will apply the following guidelines.  The purpose of a motion to dismiss is to test the legal sufficiency of the complaint, not to decide the merits.  *Triad Assocs., Inc. v. Chicago Housing Auth.*, 892 F.2d 583, 586 (7th Cir. 1989).  In determining the propriety of dismissal under Federal Rule of Civil Procedure 12(b)(6), the court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff.  *Johnson v. Rivera*, 272 F.3d 519, 520 (7th Cir. 2001).  A court may

dismiss a complaint only if it appears beyond doubt the plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Further, a court must "construe pleadings liberally, and mere vagueness or lack of detail does not constitute sufficient grounds for a motion to dismiss." *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir. 1985). A complaint need not plead law or be tied to one legal theory. *LaPorte County Republican Cent. Comm. v. Board of Comm'rs of the County of LaPorte*, 43 F.3d 1126, 1129 (7th Cir. 1994) (citing *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992)). A complaint may not be dismissed just because it omits factual allegations, but it may be dismissed when the plaintiff makes clear that he does not plan to prove an essential element of his case. *Id.* With these legal principles in mind, the Court turns to the instant motions.

<u>Showboat's Rule 12(b)(1) Motion</u>

The Court will address the 12(b)(1) motion first, because generally "jurisdictional issues should be addressed first." *Okoro v. Bohman*, 164 F.3d 1059, 1061 (7th Cir. 1999). *See Carlisle v. United States*, 517 U.S. 416, 453 (1996). Should this Court find that it lacks subject matter jurisdiction, then it does not have the power to hear this case, and consequently, it need proceed no further. *State of Illinois v. City of Chicago*, 137 F.3d 474, 478 (7th Cir. 1998). Once federal subject matter jurisdiction is challenged, the

plaintiff bears the burden of proving that it exists.  *Kontos*, 826 F.2d at 576; *Marina Entm't Complex, Inc. v. Hammond Port Auth.*, 842 F.Supp. 367, 369 (N.D. Ind. 1994).

Defendants argue that although Plaintiffs attempt to invoke admiralty jurisdiction under 28 U.S.C. § 1333 (Compl. ¶ 1), the Court lacks admiralty jurisdiction.  Defendants specifically urge that the MLA provides no substantive cause of action for unpaid overtime wages (Plaintiffs do not dispute this), and that because the substantive basis of Plaintiffs' overtime wage claims is the FLSA, it is too attenuated from maritime law to support a valid maritime lien and admiralty jurisdiction.  According to Defendants, this is underscored by the fact that the FLSA exempts "any employee employed as a seamen" from claims for overtime wages.  *See* 29 U.S.C. § 213(b)(6).  Further, Defendants argue that because the complaint alleges that Plaintiffs "spent a substantial portion of their time performing services of a non-maritime character," there is not a sufficient nexus to maritime law to support the maritime lien or admiralty jurisdiction.  (Compl. ¶ 5.)

Plaintiffs respond by pointing to *Superson v. M/V Winstar*, No. 2:03 CV 188 (N.D. Ind. Dec. 16, 2003) (hereinafter "S*uperson* slip op."), which they claim ruled on an identical motion, involving identical defendants, vessel, and arguments, and found that admiralty jurisdiction existed.  Plaintiffs further argue that this case is even more appropriately cognizable under admiralty jurisdiction than

*Superson* because there is a claim specifically pled under the MLA, which expressly confers a preferred maritime lien for wages against the vessel *in rem* or against its owners.  *See* 46 U.S.C. § 31301(5)(D) (conferring a lien "for wages of the crew of the vessel").

The Court initially notes that there have been several decisions, including *Superson*, that address Plaintiffs' co-workers' claims for overtime wages from the same defendants, involving the same vessel. In *Superson*, the district court held the *in rem* claim against the *Winstar* was properly cognizable under admiralty jurisdiction because there was a potentially valid maritime lien against the vessel. *(Superson* slip op. at 8.)  The *Superson* defendants argued that because the underlying cause of action was for overtime wages (as opposed to regular unpaid wages), and because the basis for the overtime wage claims was in state law, a maritime lien was inappropriate and thus admiralty jurisdiction was lacking.  *Id.* at 4-5.

The *Superson* court undertook a thorough analysis of *in rem* actions, liens, and wage claims.  It found that a seaman's lien for unpaid wages was the most "sacred" of all maritime liens, quoting *The John G. Stevens*, 170 U.S. 113, 119 (1898), and that "[s]eaman's wages include many different types of compensation such as overtime pay." *Superson* slip op. at 4.  More importantly, *Superson* stated that:

> [t]his court finds nothing in the case law
> concerning seamen's wage claims to suggest that
> admiralty jurisdiction should extend to a
> particular strain of wage claims and not to
> others.  To the contrary, most cases refer to
> "seamen's claims for wages" quite generally,

> stating only that admiralty has an "undisputed
> jurisdiction" over the subject of "seaman's
> wages." *Sheppard .v Taylor*, 30 U.S. 675, 711
> (1831); *see also Harden* [v. *Gordon*], 11 F.Cas.
> [480, 480 (C.C. Maine 1823)] ("The admiralty has
> rightful jurisdiction over the subject of
> compensation of seamen for maritime services . .
> . ."); *Putnam v. Lower*, 236 F.2d 561, 570 (9th
> Cir. 1956) ("The jurisdiction of courts of
> admiralty over wage claims of seamen is anciently
> established."); *Hart v. Proceeds of the Oakland*,
> 32 F. 234, 236 (N.D. Ohio 1887) ("'Over the
> subject of seamen's wages, the admiralty has
> undisputed jurisdiction in rem . . . .'")
> (quoting *Sheppard*, 30 U.S. at 711).

*Superson* slip op. at 6. *Superson* clearly weakens Defendants' claim that this case is outside the realm of admiralty jurisdiction because the underlying claim for unpaid overtime wages is based upon the FLSA.[2]

It is appropriate to review several other cases in which courts have examined claims regarding Plaintiffs' co-workers and Defendants. *Tate v. M/V Winstar*, Cause No. 2:03-CV 432 (N.D. Ind.), involved Defendants and Plaintiffs' co-workers, and it also involved a 12(b)(1) motion to dismiss. In that case, the district court stated he was inclined to believe plaintiffs were not entitled to status as seamen, and thus could not exercise admiralty jurisdiction. *Tate v. M/V Winstar*, Cause No. 2:03-CV 432, at 9-10 (N.D. Ind. Oct. 4,

---

[2]Defendants essentially concede that *Superson* eliminates their arguments that either *McMichael v. Falls City Towing Co.*, 199 F. Supp. 2d 632 (W.D. Ky. 2002) (dismissing overtime wage case for lack of admiralty jurisdiction), or *Marina Entm't Complex, Inc. v. Hammond Port Auth.*, 842 F.Supp. 367 (N.D. Ind. 1994) (dismissing suit for lack of admiralty jurisdiction under Rule 12(b)(1)), apply to the present case. (Defs.' Mem. in Supp. of Rule 12(b)(1) Mot. to Dismiss, p. 5.)

2004)(hereinafter "*Tate* slip op."). However, the court instructed the parties to brief the issue of whether they were really "seamen." *Id.* at 12-13. The motion to dismiss remains pending.

*Tate* recognized an inherent inconsistency between plaintiffs' attempt to deny their "seaman" status (seemingly in order to evade application of the FLSA's seaman exemption, 29 U.S.C. § 213(b)(6)), while simultaneously asserting admiralty jurisdiction to pursue an MLA claim. *Tate* slip op. at 7-8. Initially, the court noted that admiralty jurisdiction would not be inappropriate simply because the underlying cause of action to enforce the seaman's wage lien under the MLA was the FLSA. *Id.* at p. 5, n 4. The FLSA claim was not, as Defendants in this action argue, too attenuated from maritime law for admiralty jurisdiction to be appropriate. *Id.* This was because the wages of seamen are always tied to admiralty jurisdiction under section 1333, and the lien for seaman's wages is the most sacred of all liens. *Id.*

However, the *Tate* court held that admiralty jurisdiction would not be appropriate if the plaintiffs were not entitled to status as seamen. *Id.* at 6-7. The court stated that "in the *Superson* matter all documents filed by both parties consistently conferred the status of seamen upon the *Superson* plaintiffs; ultimately, all parties proceeded as if plaintiffs were unquestionably seamen." *Id.* at 7. n. 5. In contrast, in *Tate*, the court highlighted Plaintiffs' assertion that they were not employed as seamen aboard the *Winstar*, and

considered the Seventh Circuit's decision in *Howard v. Southern Illinois Riverboat Casino Cruises, Inc.*, 364 F.3d 854 (7th Cir. 2004). *Id.* at 9-11.  The *Howard* court held that employees working aboard a riverboat casino indefinitely moored to the dock and not in navigation, were not seamen for the purpose of the Jones Act. *Howard,* 364 F.3d at 857-58.  The *Howard* court relied upon the idea that the plaintiffs could not prove they had a "substantial employment-related connection to a vessel *in navigation*," one of the two requirements necessary for obtaining status as a seaman under the Jones Act.  *Id.* at 856 (emphasis in original).   The *Tate* court analogized the term seaman under the Jones Act with that under the MLA because both situations involved employees on moored gambling boats.  *Tate* slip op. at 10-11.  Notably, the *Tate* court stated that although *Howard* hinged on whether the vessel was "in navigation," that is a "concept [that] is also historically important to the determination of who is a 'seaman' for purposes of obtaining a seaman's wage lien."  *Id.* at 11 (citing *Slavin v. Port Serv. Corp.*, 138 F.2d 386 (3d Cir. 1943)).

In *Harkins v. Riverboat Servs., Inc.*, 385 F.3d 1099, 1102 (7th Cir. 2004), the plaintiffs appealed from a jury verdict finding that they were seamen under the FLSA's exemption, and argued that the district court should have ruled as a matter of law that they were not seamen under the FLSA.  As stated earlier, the FLSA exempts "any employee employed as a seaman" from bringing a claim for unpaid overtime wages.  *Id.* (citing 29 U.S.C. § 213(b)(6)).  In discussing

the previous cases that addressed this exemption, the Court declared that "[o]nly two points emerge with any clarity from the cases:  the employee must do maritime-type work on a ship that is within the admiralty jurisdiction; and decisions interpreting the term 'seaman' in other statutes do not necessarily control its meaning in the FLSA." *Harkins*, 385 F.3d at 1102.  Notably, *Harkins* did not cite to *Howard*, which was at the crux of the *Tate* court's argument that the *Tate* plaintiffs were probably not seamen for purposes of admiralty jurisdiction.  We thus have four cases dealing with the term "seaman" in three different contexts — *Harkins* with the FLSA, *Howard* with the Jones Act, and *Tate* and *Superson* with a seaman's wage lien.  Add to the mix the *Harkins* court's notion that no interpretation controls another, and this jurisdictional issue becomes thorny.

This Court finds that, under *Harkins*, this case is properly cognizable under admiralty jurisdiction.  In *Harkins*, the Court noted that "admiralty law guarantees employment benefits to seamen that are not guaranteed by law to other workers."  *Harkins*, 385 F.3d at 1103*.*  These include the doctrine of maintenance and cure, which "obligates employers to provide room, board, and medical care to a seaman injured on the job, even if through no fault of the employer, [and] the Jones Act [, which] extends the uniquely liberal employer-liability standard of the Federal Employers Liability Act to seamen."  *Id.* (citations omitted).  The Court noted that the plaintiffs did not need these protections because the casino rarely sails, but the parties conceded

the benefits anyway.  *Id.*

Further, the *Harkins* court found that:

> when persons employed on a ship, even so atypical
> a one as an Indiana gambling boat, are classified
> as seamen for purposes of entitlement to the[se]
> special employment benefits to which seamen,
> including therefore these plaintiffs, are
> entitled, **a presumption arises that they are
> seamen under the FLSA as well.**

*Id.* (emphasis added).  The Court went on to state that:

> [t]he presumption could probably be rebutted in
> a case in which a person employed on a ship was
> engaged in activities that had no maritime
> tincture whatever;  an example would be a waiter
> employed on a cruise ship to serve meals to the
> passengers at regular hours.  He might be exposed
> to some of the hazards inherent in working on a
> ship, and this might justify classifying him as
> a seaman for Jones Act and maintenance-and-cure
> purposes, since both the statute and the
> admiralty doctrine concern shipboard injuries.
> But in all other respects his working conditions
> might be identical to those of waiters in
> conventional landlocked restaurants.  The
> presumption is not rebuttable on this ground in
> the present case, however, because none of the
> plaintiffs is a croupier, cashier, bouncer,
> dealer, waiter, or entertainer; all are (or so
> the jury could reasonably find) members of the
> ship's operating crew.

*Id.* (citations omitted).

This *Harkins* presumption applies to  those who are seamen for the
purpose of the Jones Act or the doctrine of maintenance and cure.
*Harkins* applied this presumption of being seamen to people who were
co-workers of the present Plaintiffs.  Here, Plaintiffs had the job
title of "able-bodied seamen" and were employed "to provide necessary

services for the operation of Harrah's" casino.   (Compl. ¶ 2.)
Nowhere do Plaintiffs allege they did not perform any maritime
services.  Rather, Plaintiffs concede "they are seamen, in the general
sense of the term . . . ."  (Pls.' Answer and Mem. in Opp. to Supp.
Mem. in Supp. of Mot. to Dismiss Under Rule 12(b)(6), p. 3.)   Thus,
this Court believes Plaintiffs must be accorded the presumption of
being considered seamen.

    This Court is aided in the present jurisdictional question
because *Harkins* did not cite to *Howard* (which held that casino boat
workers on a moored boat were not seamen for the purposes of the Jones
Act).   Rather, *Harkins* held that those plaintiffs (who were
essentially in the same position as the Plaintiffs in this case), were
assumed to be seamen for the purpose of the Jones Act, and therefore
presumed to be seamen for another statute.   This Court therefore
rejects Defendants' arguments that because Plaintiffs claim they did
little maritime work, there is not a sufficient maritime nexus to
support admiralty jurisdiction.

    Also, as discussed below, the purpose of the seamen's exemption
in the FLSA and the MLA are such that it would be inappropriate to
construe the definition of seamen in the two statutes differently.
Indeed, *Harkins* made it clear that the presumption of being seamen
attaches where persons employed on a ship are classified as seamen for
purposes of entitlement to the special employment benefits to which
seamen are uniquely entitled.   Such is the case here, where

-13-

Plaintiffs' co-workers were found to have these entitlements in *Harkins*, and Plaintiffs allege in the complaint that they are "able-bodied seamen."

Therefore, this Court finds that Plaintiffs' claims are properly cognizable under admiralty jurisdiction. Defendants' Rule 12(b)(1) Motion is consequently **DENIED**.


Defendants' Rule 12(b)(6) Motion

Defendants also assert that the complaint fails to state a claim because the MLA does not create an independent cause of action for unpaid overtime, and because Plaintiffs are seamen under the FLSA, they are exempt from its overtime provisions. *See* 29 U.S.C. § 213(b)(6) ("The provisions of [the FLSA] shall not apply with respect to . . . any employee employed as a seaman."). One is "'employed as a seaman' if he performs . . . service which is rendered primarily as an aid in the operation of such vessel as a means of transportation, provided he performs no substantial amount of work of a different character." 29 C.F.R. § 783.31.

It appears that Plaintiffs try to bootstrap their FLSA claim onto the MLA claim — arguing they are due overtime wages under the FLSA, and they can secure those overtime wages against the *Winstar* in the form of a seaman's wage lien. There is an inconsistency in this argument. To be entitled to a maritime lien for wages, Plaintiffs must be "seamen," 26 U.S.C. § 30101, however, the FLSA exempts "any

-14-

employee employed as a seaman" from its coverage.   29 U.S.C. §
213(b)(6).   Plaintiffs make much of the concept that one can be a
"seaman" generally, but not "employed as a seaman" for FLSA purposes.
Plaintiffs cite Justice O'Connor for the proposition that the term
"seaman" "is a maritime term of art" that must be read in the context
of the purpose of the law to which it is being applied.   *McDermott
Int'l, Inc. v. Wilander*, 498 U.S. 337, 342 (1991); *see Harkins*, 385
F.3d at 1103 (stating that "the classification of an employee as a
seaman under one statute or admiralty doctrine does not necessarily
require that he be so classified under another one which might have
a different purpose).   This concept does open the door for the term
"seaman" to be construed differently in the context of different
statutes.   However, an examination of the case law and purposes of the
MLA and the FLSA exemption clearly show that the term "seaman" should
be construed the same for both the MLA and FLSA.

It is worth repeating that the *Harkins* court, dealing with the
same Defendants, the same vessel, and co-workers of Plaintiffs, first
held that:

> when persons employed on a ship, even so atypical
> a one as an Indiana gambling boat, are classified
> as seamen for purposes of entitlement to the
> special employment benefits to which seamen,
> including therefore these plaintiffs, are
> entitled, a presumption arises that they are
> seamen under the FLSA as well.

*Harkins,* 385 F.3d at 1103.

The Seventh Circuit held that the presumption could be rebutted:

-15-

in a case in which a person employed on a ship was engaged in activities that had no maritime tincture whatever; an example would be a waiter employed on a cruise ship to serve meals to the passengers at regular hours. He might be exposed to some of the hazards inherent in working on a ship, and this might justify classifying him as a seaman for Jones Act and maintenance-and-cure purposes, since both the statute and the admiralty doctrine concern shipboard injuries. But in all other respects his working conditions might be identical to those of waiters in conventional landlocked restaurants.

*Id.* (citations omitted). However, "[t]he presumption is not rebuttable on this ground in the present case because none of the plaintiffs is a croupier, cashier, bouncer, dealer, waiter, or entertainer; all are (or so the jury could reasonably find) members of the ship's operating crew." *Id.*

As stated earlier, the plaintiffs in *Harkins* were co-workers of Plaintiffs in this case.[3] Like *Harkins*, Plaintiffs seem to be members of the *Winstar's* operating crew, as they claim they have the job title "able-bodied seamen" and refer to the "crew" in the complaint. (Compl. ¶ 2.)  In their memorandum in opposition to Defendants' 12(b)(1) motion, Plaintiffs argue that "[f]ew things are more maritime in nature than a seaman's suit for wages." (Answer to Defs.' Rule 12(b)(1) FRCP Mot. to Dismiss, p. 2.)  Also like *Harkins*, Plaintiffs do not allege in the complaint that they are only croupiers, cashiers, bouncers, dealers, waiters, or entertainers. Rather, it seems to the Court that, based upon the allegations contained in the complaint,

---

[3]The *Winstar* was formerly known as the *Showboat Mardi Gras Casino,* the name of the vessel in *Harkins*.

both Plaintiffs could reasonably be found by a jury to be members of the ship's operating crew.

The *Harkins* court specifically refutes several of Plaintiffs' arguments.  Plaintiffs ask this Court to consider the Department of Labor's definition of "seaman," arguing they are not "seamen" because they do a "substantial amount of work of a different character."  *See* 29 C.F.R. § 783.31.  However, the *Harkins* court held that this "just means that the employee must be a (more or less) full-time member of the marine crew . . . ."  *Harkins*, 385 F.3d at 1103-04.  The Court further stated that:

> [a] ship is a means of transportation, and even when it is docked the marine crew is responsible for its safe and efficient operation and maintenance--for keeping it afloat and clean, scraping the barnacles off its hull, keeping the engines in repair, preventing fires, etc.  **All this is maritime work, and the members of the ship's crew who do it, thus including the plaintiffs in this case as the jury found, are seamen even during the intervals in which the ship is moored.**

*Id.* at 1104 (emphasis added).  The Seventh Circuit clearly believes that the Department of Labor's definition of "seaman" did not exclude the *Harkins* plaintiffs from also being "seamen."

A recent Northern District of Illinois decision regarding the same defendants and Plaintiffs' co-workers held that the casino's workers were seamen under the FLSA exemption.  *See Tate v. Showboat Marina Casino P'ship*, 357 F. Supp. 2d 1075 (N.D. Ill. 2005) (hereinafter "*Showboat*") (granting summary judgment in favor of

defendants) (appeal docketed, No. 05-1681 (7th Cir. Mar. 15, 2005)). The *Showboat* court noted that it was undisputed that the Jones Act applied to the plaintiffs (as the Jones Act was applied in *Harkins)*. *Id.* at 1080. Therefore, "under *Harkins,* a presumption arises that Plaintiffs are seamen under the FLSA as well." *Id.* (citing *Harkins*, 385 F.3d at 1103). The *Showboat* court went on to hold that the plaintiffs could not rebut this presumption at trial because the work they did could be construed as work of seamen, and thus the Court could determine **as a matter of law** that plaintiffs were seamen under the FLSA's exemption. *Showboat*, 357 F. Supp. 2d at 1080-81.

The *Showboat* court also rejected the plaintiffs' argument that the FLSA's regulations required a finding of no seamen status. *Id.* at 1082. Following *Harkins*, it looked at "whether Plaintiffs spend their time performing duties 'that are necessary to the operation' of the *Winstar* 'because it is a ship or because it is a casino.'" *Id.* (quoting *Harkins,* 385 F.3d at 1104). The *Showboat* court found, as a matter of law, that the work done by plaintiffs was maritime work; therefore, there was no issue of fact for trial. *Id.* at 1085.

Here, Plaintiffs argue that the *Harkins* and *Showboat* courts are not the first courts to misapprehend the "difference between a Jones Act seaman and an employee 'employed as a seaman' for wage payment purposes under the FLSA." They believe the Supreme Court made clear that the question of how employees spent their time working was one of fact, while the question of whether their particular activities

-18-

excluded them from the FLSA's overtime benefits was a question of law. *See Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986).

*Showboat*'s reasoning shows that whether the presumption of being seamen can be rebutted may indeed be decided as a matter of law (relying upon the guidance of *Harkins*).  It even posited that if the district court had Judge Posner's opinion to work with, it could have decided the issue as a matter of law.  *Showboat*, 357 F. Supp. 2d at 1081.  Further, the *Winstar's* dockside status (defendants in that case admitted the *Winstar* was docked 92% of the time), did not rebut the presumption that plaintiffs were seamen because even while dockside, the marine crew still was 'responsible for its safe and efficient operation and maintenance.'"  *Id.* at 1082 (citing *Harkins*, 385 F.3d at 1104).  It appears clear that the *Showboat* court addressed virtually every cogent argument that the instant Plaintiffs make regarding the interpretation of *Harkins*.  This Court agrees with the reasoning set forth in *Showboat*.

Aside from this strong precedent, there are other reasons that this Court finds Plaintiffs are seamen under the FLSA's exemption. This Court's earlier finding that Plaintiffs are seamen under the MLA (a position advanced by Plaintiffs themselves), leads it to this conclusion.  The word "seaman" has an "established meaning" in general maritime law, however, it may be refined given the purpose behind the statute conveying seamen rights.  *See McDermott*, 498 U.S. at 342.

The purposes of the MLA (which grants the right to a seaman's

wage lien), and the seaman's exemption from the FLSA, shed light on the fact that the term "seaman" should be interpreted the same in the context of both statutes.  Traditionally, seamen contributed to the welfare of a ship and ensured that it arrived at its port safely.  *See* ROBERT FORCE & MARTIN J. NORRIS, THE LAW OF SEAMEN § 2.2 (5th ed. 2004) (citation omitted).  Such work was often "difficult and extremely dangerous, requiring long stays away from home and exposure to the perils of the sea."  THOMAS J. SCHOENBAUM, 1 ADMIRALTY & MARITIME LAW § 6-1 (4th ed. 2004).  As a consequence, seamen often found themselves insecure in foreign ports wholly dependent upon the Shipmaster or the Shipowner for survival.  *See Brandon v. S.S. Denton*, 302 F.2d 404, 416 (5th Cir. 1962).  Thus, the seaman's wage lien offered the seaman some protection against being stranded in a foreign port without pay and means to survive.

Asserting a claim for a seaman's lien (given the lien's purpose, as described above), is not compatible with asserting a claim, such as an overtime wage claim under the FLSA, that depends on proving that one is not a "seaman."  The *Harkins* court noted that the FLSA's exemption:

> recognizes that at sea, with a normal life impossible, working more than 40 hours a week is an appropriate work norm, as distinct from the situation in most ordinary employments, where, because 40 hours is the norm, requiring the employer to pay time and a half for overtime encourages him to spread the work by hiring enough workers to minimize the need and resulting expense of overtime . . . .

*Harkins*, 385 F.3d at 1102.  Carrying out Plaintiffs' arguments reveals the inconsistency.  First, if Plaintiffs were entitled to overtime because they do not work at sea, they are not exposed to the perils which give rise to the seaman's wage lien.  If Plaintiffs are not "seamen," then they could recover overtime wages that seamen are not entitled to, and this would become the means to obtain a lien that only seamen could have earned.  In other words, those wages that form the basis of a seaman's wage lien would be wages that could only be earned by non-seamen.  It leads to an absurd conclusion if the term "seaman" is not interpreted consistently for the purposes of the seaman's wage lien and the FLSA's exemption.  Given the purpose behind the MLA and the seaman's exemption to the FLSA, it would be inappropriate to construe the term "seaman" differently under each.[4]

The purpose behind the statutes and the applicable precedent leads to the definite conclusion that Plaintiffs are exempt as seamen under the FLSA.  Here, like in *Harkins* and *Showboat*, Plaintiffs are presumed to be seamen.  As such, they are exempt under the FLSA.  Defendants' 12(b)(6) motion to dismiss is therefore **GRANTED**.


Motion For Rule 11 Sanctions

Defendant filed a motion for Rule 11 sanctions against Plaintiffs and their counsel on the basis that Plaintiffs' claims were

---
[4]Even if Plaintiffs argued that their claim for overtime was separate from the FLSA, they cannot state a claim to enforce a maritime lien.  The MLA does not expressly create a claim for overtime wages.  Further, this Court agrees with the reasoning set forth in *Superson,* finding there is no right to overtime under general maritime law principles.  *See Superson* slip op. at 12.

indisputably barred by the statute of limitations, and arguing that Plaintiffs should never have filed the instant litigation.  This Court notes that Defendants' timeliness argument was not set forth in a motion (it was not discussed in the instant 12(b)(1) or 12(b)(6) motions), and was never properly before this Court.   Moreover, Defendants cite to no authority for the proposition that sanctions are even appropriate in such a circumstance.  Therefore, Defendants' Rule 11 motion for sanctions is **DENIED.**


CONCLUSION

     For the aforementioned reasons, the Rule 12(b)(1) Motion is **DENIED.**  However, the Rule 12(b)(6) Motion is **GRANTED.**  The Clerk is hereby **ORDERED** to dismiss this case **WITH PREJUDICE.**  Defendants' Motion For Rule 11 Sanctions is **DENIED.**


DATED:  August 9, 2005          S/RUDY LOZANO, Judge
                                 United States District Court